(Decided 16th March, 1887.)

THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.*
MARTHA HUSSEY.

*Taxation—Baltimore City Stock—Non-residents—Voluntary*
*payment.*

Stock of the City of Baltimore, held by a non-resident, is not liable to taxation in this State.

The interest on Baltimore City stock was payable at certain banks of the city, which were its authorized agents for that purpose. The

Mayor, &c., of Baltimore *vs.* Hussey.

interest was payable semi-annually on the first of July and the first of January. H. was a non-resident owner of such stock. From the 1st of July, 1878, to the 1st of July, 1884, there was deducted from the July instalment of interest on her stock the annual State tax levied thereon. This deduction was made by said banks by direction of the City Register, and the net amount of interest after such deductions was transmitted to H. by drafts drawn to her order and sent to L., her duly constituted attorney. The money thus deducted was paid over to the State by the City Register, without objection by H. or her attorney; and during all this time she had full knowledge that the State tax was assessed on the stock, and that the money was annually deducted from the July instalment of interest, and applied to its payment. In an action by H. against the city to recover the amount of interest thus deducted, it was HELD:

1st. That whatever was done by the banks and the City Register in the premises, was done with the knowledge of H. and with her approval and consent.

2nd. That by thus accepting the interest, less the amount deducted for the payment of the State tax year after year, without objection, she must be considered as having sanctioned and ratified the payment of the same by the City Register.

3rd. That the payment must, therefore, be treated as voluntarily made by H. with full knowledge of the facts and circumstances under which the taxes were demanded and paid.

4th. That such being the case she was not entitled to recover.

APPEAL from the Baltimore City Court.

This is an action brought by the appellee against the appellant to recover money claimed to be due her. The case was tried before the Court upon an agreed statement of facts, and a verdict and judgment *pro forma* were rendered in favor of the plaintiff. The defendant appealed. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Charles H. Carter.* and *Robert Gilmor, City Counsellor,* for the appellant.

*Thomas W. Hall,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

The appellee, a resident of the State of New York, is the owner of $119,000 of the debt of the City of Baltimore, commonly called City Stock; and the question is, whether this stock is liable to taxation in this State?

Were this a question of first impression, it would seem to be clear on general principles, that the stock thus held by the appellee, could not be subjected to taxation by the laws of this State. The taxing powers of a State must be necessarily limited to the taxation of persons and property within and subject to its jurisdiction. And if.so, this State can acquire no jurisdiction over the person of the appellee for the purpose of taxation, because she is a non-resident. And as to the certificates of stock owned by her, they are mere evidences of indebtedness on the part of the city, by which it promises to pay to the owner a certain sum of money with interest thereon. As such, they are unquestionably personal property in the hands of the creditor and have their taxable *situs* at the domicil of the owner. The mere right to receive of the city the principal or interest within the State, is a right personal to the creditor as owner of the debt, and is not therefore subject to taxation in this State.

But this can no longer be considered an open question, because it was fully considered and discussed by the Supreme Court in the cases of *State Tax on Foreign-Held Bonds,* 15 *Wall.,* 317, and *Murray vs. Charleston,* 96 *U. S.,* 432. In the former case bonds issued by a railroad company, and owned by non-residents, were held not to be liable to taxation by the State in which the company had its domicil. "Debts owing by a corporation," say the

Court, "like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtor and only possess value in the hands of the creditor. With them they are property, and in their hands may be taxed. The bonds issued by the railroad company in this case are undoubtedly property, but property in the hands of the holders, not property of the obligors. So far as they are held by non-residents of the State, they are property beyond the jurisdiction of the State."

In the later case of *Murray vs. Charleston*, where the plaintiff, a non-resident, was the owner of certificates of stock issued by the City of Charleston, and the city subsequently imposed a tax of two per cent. on the value of all property within its limits, and treating its stock as part of such property, directed that the tax assessed upon it should be retained by the city treasurer, the Court held that the stock owned by the appellee, a non-resident, was not liable to taxation by the city; and [further, that the exaction of the tax as against the plaintiff, was *an impairment of its obligation* upon the contract, inhibited by the Federal Constitution.

The city stock owned by the appellee not being then liable to taxation in this State, the next question is whether an action can be maintained by her to recover back the money deducted from the interest due on said stock, and applied by the City Register to the payment of the State tax assessed thereon?

There can be no controversy about the law by which this question is to be determined. If the money was thus applied by the authority, or with the approval and sanction of the appellee, with knowledge on her part of the facts and circumstances under which the tax was demanded and paid, it is well settled, that an action will not lie to recover back the money, although it was paid by the appellee through a mistake as to her legal rights. This has been time and again decided by this Court. *Mayor, &c., of*

*Baltimore vs. Lefferman,* 4 *Gill,* 431 ; *Lester vs. Mayor, &c., of Baltimore,* 29 *Md.,* 418; *George's Creek Coal and Iron Co. vs. County Comm'rs of Alleghany County,* 59 *Md.,* 260.

Was the money then paid by the authority of the appellee, with full knowledge of the facts? Now what are the circumstances under which it was paid? The interest on the stock was payable at certain banks in the City of Baltimore, these banks being the authorized agents of the city for this purpose. The interest was payable semi-annually on the 1st July and 1st January. From the 1st *July,* 1878, to *July* 1st, 1884, there was deducted from the July instalment of interest, the annual tax levied by the State of Maryland for State purposes. This tax was deducted by said banks by the direction of the City Register, and the net amount of interest after such deduction was transmitted to the appellee by drafts drawn to her order and sent to Alexander B. Lamberton, her duly constituted attorney.

The money thus deducted for State taxes was all paid over to the State by the City Register, and paid by him without objection on the part of the appellee or her attorney, and without claim or demand to refund the same. During all this time, extending for a period of six years, the appellee had full knowledge that the State tax was assessed on the stock, and that the money was annually deducted from the July instalment of interest, and applied to its payment. Whatever then was done by the banks and the City Register in the premises, was done with her knowledge, and with her approval and consent. By thus accepting the interest less the amount deducted for the payment of the State tax, year after year, without objection, she must be considered as having sanctioned and ratified the payment of the same by the City Register. And if so, the payment must be treated as one voluntarily made by the appellee with full knowledge of the facts and

circumstances under which the taxes were demanded and paid. Such being the case, the *pro forma* judgment must be reversed.

*Judgment reversed.*

(Decided 16th March, 1887)