Jerry ANTOSH and Renee S. Antosh

v.

**CITY OF COLLEGE PARK,**

No. CIV. A. CCB–04–2159.

United States District Court,
D. Maryland.

Oct. 27, 2004.

John A. Stackhouse, John Joseph McDermott, Hall Estill Hardwick Gable Golden and Nelson PC, Washington, DC, for Plaintiffs.

Kevin Bock Karpinski, Allen Karpinski Bryant and Karp PA, Baltimore, MD, for Defendant.

## MEMORANDUM

BLAKE, District Judge.

Plaintiffs have moved to remand this case to the Maryland Tax Court. They argue that removal to federal court was prohibited by the Tax Injunction Act, 28 U.S.C. § 1341. For the reasons stated below, plaintiffs' motion will be granted.

■ On or about June 14, 2004, plaintiffs filed fifty-four Petitions for Appeal in the Maryland Tax Court raising constitutional challenges to sections of the City of College Park's ("College Park") Code. (Notice of Removal at ¶ 2.) On July 14, 2004, College Park filed a notice of removal in this court pursuant to 28 U.S.C. § 1331, stating that this case involves a federal question because plaintiffs allege that sections of the College Park Code violate their rights under the United States Constitution. Plaintiffs filed a motion to remand on August 12, 2004, College Park filed its response in opposition on September 10, 2004, and plaintiffs replied on September 17, 2004.[1]

At the crux of the dispute in this case is an ordinance that assesses "fees" for trash collection on single-family homes and apartment units used as rental property on a per rental unit basis. (*See* Def.'s Opp'n Mem., Exhibit 2, Ordinance 00–08.) The ordinance exacts no such fee from single-

---

1. Plaintiffs also have filed a Motion for Protective Order pursuant to F.R.Civ. P.26(c)(1)(4) requesting that the defendant not be granted its proposed discovery. Because the motion to remand will be granted, the request for a protective order is moot.

family homes or apartment units that are owner-occupied. (*Id.*)

Plaintiffs argue that this court lacks subject matter jurisdiction because the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, prohibits federal courts from exercising jurisdiction in disputes involving state or local taxes where a suitable remedy is available in state court. *See Collins Holding Corp. v. Jasper County, South Carolina,* 123 F.3d 797, 799 n. 2 (4th Cir.1997)(citing *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981)). The TIA is a jurisdictional bar not subject to waiver. *See Folio v. City of Clarksburg W.Va.,* 134 F.3d 1211, 1214 (4th Cir.1998)(citing *Collins Holding Corp.,* 123 F.3d at 799 n. 1). The TIA applies only to those cases where "a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "[A] state-court remedy is plain, speedy and efficient only if it provides the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *California v. Grace Brethren Church,* 457 U.S. 393, 411, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982) (citations and internal quotation marks omitted). "Providing for a refund action may be sufficient. ." *Collins Holding Corp.,* 123 F.3d at 800 (citing *International Lotto Fund v. Virginia State Lottery Dep't,* 20 F.3d 589, 593 (4th Cir.1994)).

College Park first contends that the challenged assessments are fees rather than taxes and therefore the TIA is inapplicable. Second, it maintains that Maryland does not provide an adequate avenue for the refund of fees or taxes and therefore federal courts may exercise jurisdiction.

While the challenged section of the ordinance refers to the imposed charge as a "fee," federal courts decide whether it is a tax "guided by 'federal law . . . rather

than . . . state tax labels.' " *Folio,* 134 F.3d at 1217 (quoting *Robinson Protective Alarm Co. v. City of Philadelphia,* 581 F.2d 371, 374 (3d Cir.1978)). To determine whether a state or local law is a "tax" or a regulatory "fee," the Fourth Circuit applies a three prong test that considers: (1) the entity that imposes the charge; (2) the population subject to the charge; and (3) the purposes served by the money obtained by the charge. *Valero Terrestrial Corp. v. Caffrey,* 205 F.3d 130, 134 (4th Cir.2000)(citing *San Juan Cellular Telephone Co. v. Public Service Comm'n,* 967 F.2d 683, 685 (1st Cir.1992)). While the "classic tax" is levied by the legislature upon a large segment of society and is spent to benefit the general public, a "classic fee" is set by an administrative agency upon a specific group that is subject to its regulation for regulatory purposes or to raise money for a special fund or regulation-related expense. *Id.* When the three-prong analysis suggests a charge falls somewhere between a classic tax and a fee, "the most important factor becomes the purpose behind the statute, or regulation, which imposes the charge." *Id.*

The three-part inquiry indicates that the charge imposed by the College Park Code is a tax. First, the charge was imposed by the City Council and is placed into the City's General Fund. Second, the charge is imposed on all people who live in single-family rental homes or apartments-a considerable segment of the population. Last, and most importantly, the money raised by the charge is intended to help the City manage the increased cost of garbage and refuse disposal. (Def.'s Mem. at Ex. 2, Ordinance 00–08, at ¶ 3.) The plain language of the ordinance states that the Mayor and City Council "deem it to be *in the best interest of the City* to immediately amend the Code to reflect the increased costs associated with the collection of garbage and refuse collection during the

2000–2001 fiscal year." (*Id.* at 2, at¶ 2.)(emphasis added.)

College Park maintains that the charge in this case is a user fee for the benefit of picking up extra and heavier trash and is intended to discourage people from creating excess trash. The City Code, however, already provides for the imposition of additional fees for the collection of bulky items like air conditioners, refrigerators, heat pumps and tires. (Def.'s Mem. at 4.) Further, this fee is imposed on a yearly basis whether or not the individual is deemed to produce bulkier or more trash than others.

Importantly, the City has no documentation to show that rental units produce larger amounts of trash than owner-occupied housing. "Records reflecting weight of trash and/or special trash collected are not maintained in a manner that reflects rented single family homes versus owner-occupied single family homes." (Pls.' Reply at Ex. 1, Letter to Prince George's County Property Owners Association from Patricia A. McCants and Stephen Groh, at ¶ 4.) Likewise, College Park has no data that distinguishes between trash tipped to landfills from regular and special trash pickups or between trash brought to landfills from single family rentals and from owner-occupied single family residences. (*Id.* at ¶ 5.) As plaintiffs argue, there is no rational reason to assume that renters of single family homes produce more trash or bulkier trash than people who happen to own their home. Further, while College Park desires to treat these individual rental units like "other commercial entities," these apartments are actually inhabited by individuals and not businesses. (*Id.* at Item 13, ¶ 3.)

College Park pays "tipping fees" to the landfill per ton of trash. The $180.00 charge assessed to single family rental units on a yearly basis goes into the General Fund, from which both the salaries of employees who collect trash and the tip-

ping fees are paid. It is not separated to compensate those people who allegedly perform extra work for the benefit of rental units. Nor is it set aside for extra tipping fees necessitated by the collection of garbage from rental housing. Rather, the money is going to the Fund to help the City cover the increased cost of collecting everyone's garbage. Simply put, the charge imposed by the City is a tax. *See Valero*, 205 F.3d at 134 ("if the ultimate use of the revenue benefits the general public then the charge qualifies as a 'tax'.")

The City's second argument is that the state courts do not provide an adequate remedy for the plaintiffs' constitutional challenge. Maryland law incorporates the "voluntary payment doctrine" that denies monetary relief to someone who voluntarily paid tax under a mistake of law unless a statutory remedy is provided. *See Halle Development Inc. v. Anne Arundel County*, 371 Md. 312, 808 A.2d 1280, 1286 (2002). When, as here, there is statutory authorization for a refund and a statutory remedy provided, that remedy is exclusive. *See Apostol v. Anne Arundel County*, 288 Md. 667, 421 A.2d 582, 585 (1980). Under Maryland law, someone who pays a tax that is improperly collected by a county or municipal corporation may file a claim for a refund with the tax collector. Md.Code, Art. 24 § 9–710. If the requested refund is denied, as was the case with the plaintiffs' request, the claimant may appeal the denial to the Maryland Tax Court. Md.Code, Art. 24 § 9–712(d)(1). After the Tax Court has issued its decision, a claimant may seek judicial review in the Circuit Court and, beyond that, to the Court of Special Appeals. Md. Code [Tax - General] § 13–532(a); Md. Code [State Government] § 10–223(b)(1). This state court remedy meets the procedural criteria required by the "plain, speedy, and efficient" provision in the TIA.

Accordingly, the federal court is barred from considering this action. *See Lawyer v. Hilton Head Public Serv. Dist.,* 220 F.3d 298, 302 (4th Cir.2000).

 Plaintiffs have requested an award of attorney's fees and costs associated with resisting removal to this court pursuant to 28 U.S.C. § 1447(c). The decision to award attorney's fees and costs is left to the court's discretion based on the nature of the removal and the remand. Because College Park's removal was not so improper that "a cursory examination...would have revealed" a lack of federal jurisdiction, and there was no evidence of bad faith, this request will be denied. *In re Lowe,* 102 F.3d 731, 733 (4th Cir.1996)(quoting *Husk v. E.I. Du Pont De Nemours & Co.,* 842 F.Supp. 895, 899 (S.D.W.Va.1994)); *see also Depew v. MNC Financial, Inc.,* 819 F.Supp. 492, 496 (D.Md.1993).

A separate order follows.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the Plaintiffs' motion for remand is Granted;

2. the Plaintiffs' motion for attorney's fees and costs is Denied;

3. the Plaintiffs' motion for protective order is Denied as moot; and

4. these consolidated cases are Remanded to the Maryland Tax Court pursuant to 28 U.S.C. § 1447.