*Alexander L. Manuel v. State of Maryland*, No. 1495, Sept. Term 2019.  Opinion by Arthur, J.

**CRIMINAL LAW—POSSESSION OF A CONTROLLED DANGEROUS SUBSTANCE**

To obtain a conviction for distribution of a controlled dangerous substance under § 5-602 of the Criminal Law Article of the Maryland Code, the State must prove that the defendant had actual or construction possession of a controlled dangerous substance.  To satisfy the possession element, the State must prove that the defendant had knowledge of both the presence and the general character or illicit nature of the substance.  The State is not required to prove that the defendant knew exactly which illicit substance or substances the defendant possessed.

In this case, the evidence was sufficient to support a conviction for distribution of fentanyl, where the evidence demonstrated that the defendant sold a mixture of heroin and fentanyl and that the defendant knew that the substance was a controlled dangerous substance.  Although the court erred by failing to instruct the jury that the State was required to prove that the defendant knew of the general character or illicit nature of the substance, the error was harmless because the uncontested and overwhelming evidence showed that the defendant knew that he possessed a controlled dangerous substance.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1495

September Term, 2019

_____

ALEXANDER L. MANUEL

v.

STATE OF MARYLAND

_____

Arthur,
Wells,
Woodward, Patrick L.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Arthur, J.
_____

Filed:  September 2, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

A Harford County jury convicted appellant Alexander L. Manuel of two counts of distribution of heroin and two counts of distribution of fentanyl. The circuit court had previously granted his motion for judgment of acquittal on a charge of knowingly distributing a mixture containing heroin and fentanyl.

The court sentenced Manuel to an aggregate term of 50 years of incarceration.

Manuel appeals his convictions, presenting the following questions, which we have reordered:

1. Is the evidence sufficient to sustain Mr. Manuel's convictions for distribution of fentanyl?

2. Where the defendant was charged with distribution of heroin and fentanyl, did the lower court err in failing to instruct the jury, as requested, as to the *scienter* required to establish the distribution of those substances?

We shall affirm the convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

A grand jury indicted Manuel on two counts of distribution of heroin and two counts of distribution of fentanyl in violation of Maryland Code (2002, 2012 Repl. Vol., 2018 Supp.), § 5-602 of the Criminal Law Article ("Crim. Law"). The grand jury also indicted Manuel on two counts of "knowingly" distributing a mixture containing heroin and fentanyl in violation of Crim. Law § 5-608.1.

At trial, the defense did not challenge the evidence that Manuel distributed heroin. Instead, it focused on the lack of evidence that Manuel knowingly distributed fentanyl.

In his opening statement, defense counsel told the jury that the defense was "not going to dispute much" of the evidence, which he said was "pretty strong for the State."

Defense counsel conceded that Manuel had conversations and meetings with an undercover detective, but pointed out that they had discussed heroin, not fentanyl. Defense counsel added that Manuel never knowingly possessed or distributed fentanyl, which he explained was similar in appearance to heroin. In conclusion, defense counsel stated, "We're very confident that you will find Mr. Manuel not guilty of distributing the fentanyl."

Detective Ryan Nelson, who was assigned to the Harford County Narcotics Task Force and worked on the undercover investigation of Manuel, testified that he contacted Manuel by telephone and made arrangements to purchase $150 worth of heroin. On April 5, 2018, Detective Nelson met Manuel at a convenience store to complete the transaction, which was recorded on covert audiovisual equipment. The recordings of the transactions between Manuel and Detective Nelson were admitted into evidence without objection and were played for the jury.

Detective Brian Wyszga was involved in the undercover investigation and was assigned to conduct surveillance of Manuel before the transaction on April 5, 2018. Detective Wyszga followed Manuel as Manuel left his place of employment in the passenger seat of a car. The car stopped at a house. Manuel went into the house for less than two minutes and returned to the car, which proceeded to the convenience store, where the transaction took place. Detective Wyszga observed as Manuel walked over to the driver's side window of Detective Nelson's car, made contact with him, and departed in less than a minute, which Detective Wyszga stated was "a common activity consistent with a drug transaction[.]"

2

Upon receiving the package from Manuel, Detective Nelson confronted Manuel about the quantity, saying that it appeared to be "light." Manuel responded that he would "double it the next time" to make up for the shortage. The package contained a white, rock-like substance that was later tested and found to contain cocaine, heroin, and fentanyl.

On April 10, 2018, Detective Nelson arranged a second controlled purchase of $150 worth of heroin from Manuel. That transaction was also recorded. Manuel handed Detective Nelson a package that consisted of three items: a clear plastic bag containing a white powder that was later tested and found to contain heroin and fentanyl; and two small plastic bags containing a brownish substance that were found to contain fentanyl alone.

Detective Nelson, who had been involved in approximately 100 undercover narcotics investigations, stated that "[i]t is just known on the street" that fentanyl is added to heroin to make it more potent. He testified that, during one of the transactions, Manuel said that "this was not his normal product[,]" which Detective Nelson interpreted to mean that "it might be stronger" than the normal product.

On cross-examination, Detective Nelson agreed that not every street product contains fentanyl, and he confirmed that he asked Manuel only for heroin. Detective Nelson acknowledged that it is visually difficult to distinguish heroin from fentanyl.

Senior Trooper John Stevens of the Maryland State Police testified that he had nine years of experience in narcotics investigations and had been involved in over 500 drug cases. He explained that it is "more common than not to have heroin adulterated

3

with fentanyl now because fentanyl is a lot less expensive" (apparently than heroin). "[W]hen someone orders heroin," he said, "a lot of times that is a generic term for fentanyl since a lot of people who are buying drugs are not versed in the difference." He added that heroin and fentanyl were "interchangeable term[s]."

At the close of the State's case, defense counsel moved for judgment of acquittal on all counts, asserting that the State had not met its burden of proving that Manuel knew that the substance he sold to Detective Nelson contained fentanyl. Defense counsel's argument did not address the merits of the motion for judgment of acquittal on the two counts concerning the distribution of heroin.

The court granted the motion for judgment of acquittal on the counts for knowingly distributing a mixture containing heroin and fentanyl, finding that the State had presented no evidence that showed that Manuel knew that the substance he was distributing contained fentanyl. The court denied the motion on the counts for distribution of heroin and the counts for distribution of fentanyl.

The defense rested without presenting any evidence. Defense counsel renewed the motion for judgment of acquittal after the defense rested. The court denied the motion, again.

In discussing jury instructions with the court, defense counsel argued that, although Manuel had been acquitted of the charges of knowingly distributing a mixture containing heroin and fentanyl in violation of Crim. Law § 5-608.1, the jury should be instructed that knowledge is an element of the crime of distribution of fentanyl in violation of Crim. Law § 5-602. The court declined to give the requested instruction,

4

reasoning that Manuel was no longer subject to the penalty in § 5-608.1 for knowingly distributing fentanyl.

Defense counsel then requested that the court include a "general intent" instruction, stating, "any criminal offense requires mens rea[;] it requires intent[.]"  The court concluded that the instruction was not warranted because it was not included in the pattern jury instruction for distribution of a controlled dangerous substance.

In accordance with the pattern jury instructions, the court charged the jury as follows:

> The Defendant is charged with two counts of the crime of distribution of heroin, which is a controlled dangerous substance.  In order to convict the Defendant, the State must prove that the Defendant sold, exchanged, transferred or gave away heroin, and that the substance was heroin.
>
> The Defendant is charged with two counts of the crime of distribution of fentanyl, which is a controlled dangerous substance.  In order to convict the Defendant, the State must prove that the Defendant sold, exchanged, transferred or gave away fentanyl, and that the substance was fentanyl.[1]

---

[1] The Maryland pattern jury instruction for distribution of a controlled dangerous substance states:

> The defendant is charged with the crime of distribution of (controlled dangerous substance), which is a controlled dangerous substance. In order to convict the defendant, the State must prove:
>
> (1) that the defendant sold, exchanged, transferred, or gave away (controlled dangerous substance); and
>
> (2) that the substance was (controlled dangerous substance).

MPJI-Cr. 4:24.2.

5

After the court instructed the jury, the court asked counsel, "[I]s there any reason that you need to approach on the jury instructions?" Defense counsel responded, "No."

In closing argument, defense counsel appeared to concede that Manuel was guilty of distribution of heroin, but argued that the State had not met its burden of proving that Manuel distributed fentanyl:

> . . . [W]e were very candid in the opening [statement]. We told you that there was a video. We told you that there were transactions on the video. We tried to focus your attention on the issues at stake, and that is the fentanyl issue in particular.
>
> . . . [W]e heard several of the State's witnesses tell you that fentanyl and [ ] heroin is a common mixture. Well, I think pretty much the exact words from Detective Nelson was that it is more likely than not that a package on the street contains some fentanyl. Well, ladies and gentlemen, more likely than not is not proof beyond a reasonable doubt. . . .
>
> I believe [O]fficer Stevens said mostly or most of the packages on the street contain fentanyl. Again, that is not proof beyond a reasonable doubt. . . .
>
> So, again hold the State to their burden. If they are going to charge Mr. Manuel with distribution of fentanyl, make them prove it is fentanyl. . . . Heroin was bargained for, not fentanyl.
>
> I would ask you to review all the evidence carefully. Don't automatically find Mr. Manuel guilty. Discuss it first. I'm confident that you will find Mr. Manuel not guilty of the fentanyl.

During jury deliberations, the court received a note from the jury, and the following colloquy ensued:

> THE COURT: We spoke in chambers. We have a note from the jury. It says, Does it matter that the Defendant was aware of what drugs were in the bag, a/k/a does intent matter?

6

We have had some discussions and I have proposed to respond that the elements of the charged offenses are outlined in the jury instructions.

Mr. Lewis, any objection to that?

[PROSECUTOR]: No objection by the State.

THE COURT: Mr. Janowich?

[DEFENSE COUNSEL]: Your Honor, I would simply answer in the affirmative, yes, it does matter and intent does matter as I requested the jury instruction. So, I would respectfully differ.

THE COURT: I understand. Of course, I have denied your request that that language be included in the jury instructions. So, I'm not going to change it at this point. I will say the elements of the charged offenses are outlined in the jury instructions[.]

Within 20 minutes after the court responded to the jury's note, the jury reached a verdict, finding Manuel guilty of two counts of distribution of heroin and two counts distribution of fentanyl. This appeal followed.

## DISCUSSION

### I. Sufficiency of the Evidence

Manuel contends that the evidence at trial was insufficient to sustain his convictions for distributing fentanyl. We disagree.

When addressing a sufficiency challenge to a criminal conviction, this Court asks "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *McClurkin v. State*, 222 Md. App. 461, 486 (2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). "In applying that standard,

7

we give 'due regard to the [fact-finder's] findings of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.'" *McClurkin v. State*, 222 Md. App. at 486 (quoting *Harrison v. State*, 382 Md. 477, 488 (2004)).  On appeal, we will not "retry the case" or "re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence."  *Smith v. State*, 415 Md. 174, 185 (2010).  Consequently, the dispositive issue is not "whether the evidence *should have* or *probably would have* persuaded the majority of fact finders but only whether it *possibly could have* persuaded *any* rational fact finder."  *Fraidin v. State*, 85 Md. App. 231, 241 (1991) (emphasis in original); *accord Stanley v. State*, 248 Md. App. 539, 564-65 (2020).

Manuel contends that the evidence was insufficient to sustain his convictions for distribution of fentanyl because there was no evidence that he knew that the substance he was distributing contained fentanyl.  The State responds that it was not required to prove that Manuel knew, specifically, that the heroin was mixed with fentanyl, but only that he had knowledge of the "general character or illicit nature" of the substance.  The State contends that even if Manuel did not know that the substance contained fentanyl, he knew that he possessed an illicit substance; therefore, the knowledge element was satisfied.

Manuel was convicted of distribution of a controlled dangerous substance, but not with possession of it.  Nevertheless, "[i]t is not possible, under [Maryland's controlled dangerous substances laws] to 'distribute' a controlled dangerous substance in violation of [Crim. Law] § 5-602 unless the distributor has actual or constructive possession

8

(dominion or control) of the substance." *Anderson v. State*, 385 Md. 123, 132-33 (2005). "Thus, possession of the substance distributed is necessarily an element of the distribution." *Id.*

One of the elements of the crime of possession of a controlled dangerous substance, and therefore also an element of distribution, is that the defendant had knowledge of "both the presence and the general character or illicit nature of the substance." *Dawkins v. State*, 313 Md. 638, 651 (1988). *See also Smith v. State*, 415 Md. at 187 (stating that "[i]nherent in the element of exercising dominion and control is the requirement that the defendant knew that the substance was a [controlled dangerous substance]"). "[S]uch knowledge may be proven by circumstantial evidence and by inferences drawn therefrom." *Dawkins*, 313 Md. at 651.

Manuel argues that he could not be found guilty of distribution of fentanyl unless the State established that he knew that he was distributing fentanyl. We know of no Maryland case addressing an argument that, to obtain a conviction for distribution of a controlled dangerous substance, the State must prove that the defendants were aware of the specific substance that they distributed. We find guidance, however, in the decisions of other state and federal appellate courts.

In *United States v. Gonzalez*, 700 F.2d 196, 199 (5th Cir. 1983), the defendant was charged with possession of heroin with intent to distribute (and related crimes) after the authorities found a large quantity of heroin in a car that he had been driving. The jury sent a note, inquiring whether "it constitute[s] possession . . . if [the defendant] knew there was contraband in the car but did not know it was heroin." *Id.* at 200. In response,

9

the court instructed the jury that it could convict the defendant for possession of heroin if it found that the defendant "knew that there was some controlled substance in the car, whether or not he knew it was actually heroin or some other drug or narcotic[.]" *Id.* The Fifth Circuit held that the supplemental instruction was an accurate statement of the law. *Id.* at 201. The court explained that, "[c]ontrary to [the defendant's] argument, the government is not required to prove that a defendant knew the exact nature of the substance with which he was dealing; it is sufficient that he was aware that he possessed some controlled substance." *Id.* at 200.

More recently, the Supreme Court interpreted the federal Controlled Substance Act, "which makes it 'unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.'" *McFadden v. United States*, 576 U.S. 186, 191 (2015) (quoting 18 U.S.C. § 841(a)(1)). Although the statute expressly contains a knowledge requirement, the Court held that that "requirement may be met by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was." *Id.* at 192; *accord United States v. Colston*, 4 F.4th 1179 (11th Cir. 2001).

Other federal appellate courts have reached similar conclusions. *See United States v. Jefferson*, 791 F.3d 1013, 1015 (9th Cir. 2015) (holding that, in a prosecution for knowingly importing or exporting a controlled substance in violation of 18 U.S.C. § 960, "[t]he government is not required to prove that the defendant knew the type or quantity of the controlled substance he imported to obtain a conviction"); *United States v. Lopez-*

10

*Martinez*, 725 F.2d 471, 474 (9th Cir. 1984) (stating that "'a defendant who has knowledge that he possesses a controlled substance may have the state of mind necessary for conviction even if he does not know which controlled substance he possesses'") (quoting *United States v. Jewell*, 532 F.2d 697, 698 (9th Cir. 1976)); *see also United States v. Moser*, 509 F.2d 1089, 1092-93 (7th Cir. 1975) (stating that a defendant who deliberately chooses not to learn what the substance was "so he could assert his ignorance if he was discovered with the substance in his possession," is "chargeable with knowledge").

In *State v. Stefani*, 132 P.3d 455 (Idaho Ct. App. 2005), the Court of Appeals of Idaho held that, in a prosecution for possession of a controlled dangerous substance, the prosecution "need only prove the defendant's knowledge that he had a controlled substance in his possession and need not prove that the defendant was aware of the precise type of controlled substance." *Id.* at 461. The court reasoned that:

> The purpose of the intent element in the definition of a possession offense is to separate innocent, accidental, or inadvertent conduct from criminal behavior. Requiring knowledge of the specific type of controlled substance would not further this policy, for an individual's mistake as to which controlled substance he possessed does not negate criminal intent. . . . [W]hether he thinks those drugs are methamphetamine or cocaine or heroin, he knows that he is engaged in conduct prohibited by our laws. An individual ought not to escape punishment for possessing an illegal substance merely because he mistakenly believed (or claims to have believed) that it was a different illegal substance.

*Id.*[2]

---

[2] In addition to some of the federal cases cited above, the Idaho court relied on *Commonwealth v. Rodriguez*, 614 N.E.2d 649, 653 (Mass. 1993); *State v. Edwards*, 607 A.2d 1312, 1313 (N.J. App. Div.1992); *State v. Engen*, 993 P.2d 161, 171 (Or. App.

11

We concur with this reasoning. Consequently we hold that, to prove the element of possession in a prosecution for distribution of a controlled dangerous substance, pursuant to § 5-602 of the Criminal Law Article, the State is not required to prove that the defendants knew exactly which illegal substance they possessed. The element of knowledge is satisfied when the evidence demonstrates that the defendants are aware of the "general character or illicit nature of the substance." *Dawkins*, 313 Md. at 651.

With that in mind, we conclude that the evidence at trial was sufficient to support a finding that Manuel knew of the general character or illicit nature of the substance. Indeed, by not challenging the sufficiency of evidence to convict him of distribution of heroin, Manuel has essentially conceded that point. Whether he was aware that fentanyl was present along with the heroin is immaterial. The evidence was sufficient to prove that he knew that what he sold to Detective Nelson was a controlled dangerous substance.[3]

## II.  Scienter Instruction

---

1999), *superseded by statute as stated in Rudnitskyy v. State*, 464 P.2d 471, 478-79 (Or. App. 2020); *State v. Nunez-Martinez*, 951 P.2d 823, 825 (Wash. App. 1998); and *State v. Sartin*, 546 N.W.2d 449, 452 (Wis. 1996).

[3] By contrast, to prove that Manuel "knowingly" distributed fentanyl in violation of Crim. Law § 5-608.1, the State was required to show that Manuel knew that he was distributing fentanyl, and not just any illicit substance. Notably, when a defendant is found guilty of violating § 5-608.1, a court must impose an additional sentence of 10 years, which must run consecutively to any other sentence that the court imposes. Crim. Law § 5-608.1(b)-(c).

12

Manuel contends that we must reverse his convictions for distribution of heroin

and distribution of fentanyl because the court erred in failing to instruct the jury that he

could not be found guilty of distributing a controlled dangerous substance absent

knowledge of the presence and illicit character of the substance. The State responds that

the court properly gave the pattern jury instruction on distribution of a controlled

dangerous substance. Alternatively, the State maintains that any error in failing to

instruct the jury on scienter was harmless because the evidence at trial clearly

demonstrated that Manuel was aware that he was distributing a controlled dangerous

substance.[4]

As an initial matter, we note that Manuel did not object to the instructions given to

the jury at the close of the evidence. Accordingly, the scope of our review is limited to

the court's response to the note from the jury. *See* Md. Rule 4-325(e) (2019) (stating that

"[n]o party may assign as error the giving or the failure to give an instruction unless the

party objects on the record promptly after the court instructs the jury, stating distinctly

the matter to which the party objects and the grounds of the objection[]");[5] *Watts v. State*,

457 Md. 419, 427 (2018) (stating that, "'[u]nless the attorney preserves the point by

---

[4] The State argues that Manuel failed to preserve his challenge to the convictions for distribution of heroin in violation of § 5-602, because he did not argue at trial that knowledge was an element of that offense, but only of distribution of fentanyl in violation of § 5-602. As the omitted instruction would have applied to both distribution of heroin and distribution of fentanyl in violation of § 5-602, we shall consider his argument notwithstanding the potential problem with preservation.

[5] As of July 1, 2021, former Rule 4-325(e) became Rule 4-325(f). The current rule is substantively identical to the former rule.

13

proper objection after the charge, or has somehow made it crystal clear that there is an ongoing objection to the failure of the court to give the requested instruction, the objection may be lost[]'") (quoting *Sims v. State*, 319 Md. 540, 549 (1990)).

Maryland Rule 4-325(c) provides that "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding." "Normally, jury instructions are given 'at the conclusion of all the evidence and before closing arguments,' but the court 'may supplement them at a later time when appropriate.'" *Sweeney v. State*, 242 Md. App. 160, 173 (2019) (quoting Md. Rule 4-325(a)).

"Supplemental instructions are often triggered by a jury question." *Id.* "The decision of whether to provide a supplemental instruction, including an instruction given in response to a question from the jury, is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." *Jones v. State*, 240 Md. App. 26, 40 (2019).

"[N]ot all jury questions require an answer—it may also be appropriate for the trial judge simply to tell the jury to rely on the instructions given prior to closing arguments." *Sweeney v. State*, 242 Md. App. at 173. But, "[w]hen a jury question involves an issue central to the case, 'a trial court must respond . . . in a way that clarifies the confusion evidenced by the query.'" *Id.* (quoting *State v. Baby*, 404 Md. 220, 263 (2008)).

"A requested jury instruction, general or supplemental, must be given when the following three requirements are satisfied: *first*, it must be a correct statement of the law;

*second*, the instruction must apply to the facts of the case; and *third*, it must not be 'fairly covered elsewhere' in the jury instructions[.]" *Sweeney v. State*, 242 Md. App. at 173-74 (emphasis in original) (citing *Dickey v. State*, 404 Md. 187, 197-98 (2008)). Applying that three-part test, we conclude that the trial court erred in not giving the jury a supplemental instruction to the effect that the State must prove that Manuel knew of the general character or illicit nature of the substance before Manuel could be found guilty of distribution of a controlled dangerous substance.

First, the supplemental instruction was a correct statement of the law: as explained earlier in this opinion, distribution entails possession, and possession entails knowledge of the general character or illicit nature of the substance. Therefore, that knowledge is an element of distribution of a controlled dangerous substance.

Second, the requested instruction was applicable to the facts of the case: the State charged Manuel with distribution of a controlled dangerous substance.

Third and finally, the requested instruction on scienter was not fairly covered elsewhere in the instructions. If the State had charged Manuel with both possession and distribution of a controlled dangerous substance, the court would certainly have instructed the jury on the elements of possession, including the requirement "that the defendant knew the general character or illicit nature of the substance[.]"[6] The jury did not receive that instruction because the State did not charge Manuel with possession.

---

[6] *See* MPJI-Cr 4:24 (Narcotics and Controlled Dangerous Substance – Possession), which provides:

15

As all three of the requirements in *Sweeney* were satisfied, we conclude that the court erred in not instructing the jury on the element of knowledge where the defendant was charged with distribution of a controlled dangerous substance.[7]

Nonetheless, Manuel is not entitled to an automatic reversal of his convictions. Rather, we must reverse the judgments only if we are unable "'to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict.'" *Taylor v. State*, 473 Md. 205, ___, 249 A.3d 810, 828 (2021) (quoting *Dorsey v. State*, 276 Md. 638, 659 (1976)).

Where the error involves the omission of an element of an offense from a jury instruction, the reviewing court must ask "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element."

---

In order to convict the defendant of possession of (<u>controlled dangerous substance</u>), the State must prove:

(1) that the defendant knowingly possessed the substance;

(2) that the defendant knew the general character or illicit nature of the substance; and

(3) that the substance was (<u>controlled dangerous substance</u>).

[7] In concluding that the court was required to supplement the pattern jury instruction for distribution of a controlled dangerous substance, we do not mean to suggest "a departure from the appellate policy of general adherence to the Maryland Criminal Pattern Jury Instructions." *Rajnic v. State*, 106 Md. App. 286, 291 n.1 (1995). Our holding is limited to cases in which the State charges the defendant with distribution of a controlled dangerous substance; the jury instructions do not otherwise cover the elements of possession (for example, because the State did not charge the defendant with possession of a controlled dangerous substance); and the instruction is either requested or becomes necessary to clarify confusion expressed by the jury on an issue central to the case.

16

*Nottingham v. State*, 227 Md. App. 592, 611 (2016) (quoting *Neder v. United States*, 527 U.S. 1, 19 (1999)). "If, in answering that question, 'a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.'" *Id.* (quoting *Neder v. United States*, 527 U.S. at 17).

The State cites *Heckstall v. State*, 120 Md. App. 621 (1998), in support of its assertion that the instructional error was harmless. In that case, the police observed the defendant and another person engaging in what appeared to be several drug transactions:

> In each transaction, [the defendant] was approached by one or more individuals, followed by a brief conversation and an exchange of cash. [The defendant] would then enter the housing complex and return moments later with an object that appeared to be heroin. After receiving the object, the individual who had approached and exchanged cash with [the defendant] would depart.

*Id.* at 624 n.2.

The defendant was convicted of possession of heroin and conspiracy to distribute heroin. *Id.*

On appeal, this Court held that the trial court erred in giving a supplemental jury instruction on possession that omitted language concerning the State's obligation to prove that the defendant had knowledge of the illicit character of the substance. *Id.* at 628. The error was, however, harmless, because it was "inconceivable that the jury, after considering the evidence before it, could have come to any other conclusion than that [the

17

defendant] was aware of the 'general character and illicit nature' of the substance being sold." *Id.* at 629.

Here, Manuel's knowledge of the illicit nature of the substance being sold was supported by uncontested evidence. Indeed, the defense implicitly conceded that Manuel sold heroin to Detective Nelson. As stated earlier in this opinion, the State was not required to prove that Manuel knew which specific substance or substances he was distributing, but only that he was aware of their general character or illicit nature. Consequently, the only conclusion the jury could have reached was that Manuel knew that he possessed a controlled dangerous substance. In these circumstances, we have no difficulty in declaring our belief, beyond a reasonable doubt, that the instructional error had no influence on the verdict and, thus, that it was harmless.

**JUDGMENTS OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**